UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAJEH A. SAADEH,<br><br>        Plaintiff,<br><br>v.<br><br>TOWNSHIP OF SPRINGFIELD, *et al.*,<br><br>        Defendants. | Case No. 24-cv-11246 (ES) (SDA)<br><br>**OPINION & ORDER ON MOTION TO QUASH**<br>**(ECF No. 62)**<br><br>**December 23, 2025** |

**STACEY D. ADAMS, United States Magistrate Judge**

      This matter comes before the Court on the Motion of Plaintiff Rajeh A. Saadeh ("Plaintiff") to Quash a Third-Party Subpoena served by Defendants Township of Springfield ("Springfield Township"), Springfield Township Police Department (the "STPD"), John Cook, and James Mirabile (collectively, the "Springfield Defendants") upon Meta Platforms, Inc. ("Meta"), and to Revise that Third-Party Subpoena. (ECF No. 62). The Springfield Defendants oppose the Motion. (ECF No. 65). Defendants State of New Jersey, New Jersey State Police, and Superintendent of the New Jersey State Police take no position on the Motion. (ECF No. 64). Plaintiff has filed a Reply. (ECF No. 66).

      The Court decides this Motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Motion is **GRANTED IN PART**.

## FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY

**I.      Facts**[1]

Plaintiff applied to the STPD for a permit to carry a handgun on December 16, 2022. (ECF No. 43 p. 4). Plaintiff's application was granted on December 19, 2022, and the permit was valid for two years thereafter pursuant to N.J.S.A. 2C:58-4(a). (*Id.*).

Plaintiff applied to the STPD to renew the permit on August 27, 2024. (*Id.*). On November 22, 2024, Plaintiff was advised by separate emails from the State of New Jersey and the STPD that his renewal application had been denied because he was determined to be a "person where the issuance would not be in the interest of the public health, safety, or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm" pursuant to N.J.S.A. 2C:58-3(c)(5). (*Id.* pp. 4-6).

When a further explanation for the denial was not forthcoming, Plaintiff filed a request pursuant to the Open Public Records Act ("OPRA") with Springfield Township on November 27, 2024 seeking "[f]rom December 19, 2022, to the date of the response: any and all communications or documents regarding [Plaintiff]." (*Id.* p. 6). The request applied to Springfield Township government officials and employees and to the STPD. (*Id.*). While that first request was pending, Plaintiff filed a second OPRA request with Springfield Township on December 3, 2024 seeking "[f]rom December 19, 2022, to the date of the response: any and all letters, emails, and other correspondence or communications from the police to anyone in connection with the denial of anyone's application for a permit to carry a firearm, including denials of applications to renew a permit to carry a firearm." (*Id.* p. 8).

---

[1] The facts are gleaned from the Amended Complaint filed at ECF No. 43.

Plaintiff received responses to both of his OPRA requests on December 17, 2025. (*Id.* pp. 8-10). Included within those responses was a memorandum dated November 19, 2024 (which was three days before Plaintiff was issued the renewal denial) from Mirabile, who is a detective with the STPD, to Cook, who is the Chief of the STPD, regarding Plaintiff's application to renew his permit. (*Id.* p. 9). Mirabile noted in the memorandum that Plaintiff lacked any new criminal history, domestic violence history, hospital admissions related to psychological or psychiatric issues, or active warrants. (*Id.*). However, Mirabile further noted that:

> It was also found in May of 2024 that a concerned citizen of the Township of Springfield found several alarming posts made by [Plaintiff]. These posts were originally located on the applicants [sic] "X" page as well as his Instagram page. In these posts he supports pro-Hamas content. A search for the post on November 18, 2024 showed that [Plaintiff] has since removed them from his accounts as I can tell from the public side. I did locate the news articles [sic] from several different news outlets where copies of them have been added to his file. In addition to these articles it was found that [Plaintiff] was a member of the Rutgers University Advisory Board, but it appears at the time of this report he has been removed from this position. In wake [sic] of the concerned citizen, his information and posts were sent to the Union County Prosecutors Office Terrorism Task Force. With this information they completed a database check with the FBI Joint Terrorism Task Force. It was found at this time that he was not currently listed on a watch list or entered into their data base. At the time of this investigation it is believed that [Plaintiff] has strong feelings in support of Hamas and can be construed as being anti-Semitic.
>
> ….
>
> This investigation; completed and forwarded to the Chief of Police on November 19, 2024; has not uncovered any over background on [Plaintiff], but has found several concerning posts and his change in behavior is alarming.

(*Id.* pp. 9-10; *see also* ECF No. 35-2 at pp. 20-21).

3

In a subsequent filing with this Court, the Springfield Defendants further explained that Mirabile had found news articles that referred to Plaintiff's social-media posts that included videos of Israeli soldiers being killed and wounded by Hamas militants, as well as posts stating such things as "Three birds; one stone," "Say a prayer," and "hunting season." (ECF No. 56 pp. 5-6 (as noted by District Judge Esther Salas in an Order entered on December 12, 2025 at ECF No. 68)). Upon a review of Mirabile's findings, Cook denied Plaintiff's renewal application. (ECF No. 43 p. 5).

Rather than seek review of that denial in the New Jersey state courts through the process set forth under New Jersey state law pursuant to N.J.S.A. 2C:58-3(d), Plaintiff brought this action alleging violations of his constitutional rights on December 17, 2024, *i.e.*, the same day that he received the responses to his OPRA requests from Springfield Township. (ECF No. 1.) Plaintiff filed an Amended Complaint on March 28, 2025. (ECF No. 43). During the course of this action, Plaintiff's applications for injunctive relief have been denied on December 18, 2024, December 23, 2024, December 30, 2024. and December 12, 2025, respectively. (ECF Nos. 4, 20, 25, 68).

On or about March 21, 2025, the Springfield Defendants served on Meta a subpoena (the "March 2025 Subpoena") seeking production of:

> All Social Media and/or Documents that refer or relate to all public posts, comments, replies to posts/comments, stories, reels, likes, and/or videos made or published by Plaintiff on Plaintiff's Instagram account, @rajehsaadeh, during the Relevant Time Period.

(ECF No. 62-1 at ECF-designated p. 65). On March 21, 2025, Plaintiff wrote to the Court to object to the March 2025 Subpoena for being overbroad because it, *inter alia*: (1) sought access to private messages and postings, rather than only publicly-posted ones; and (2) defined the relevant time period as beginning in December 2018, which is four years prior to Plaintiff even obtaining his

4

first handgun permit. (ECF No. 39). Plaintiff reiterated those objections in letters subsequently filed on March 26, 2025 and on March 31, 2025, respectively. (ECF Nos. 42, 45).[2]

Meanwhile, on March 21, 2025, Meta sent an email to the Springfield Defendants in response to the Subpoena advising that it would be not able to provide responses to all of the information sought in the March 2025 Subpoena, and providing guidance on how to proceed. (ECF No. 51 at ECF-designated pp. 3-5). Then, by Order entered on April 2, 2025, the Court directed the Springfield Defendants to notify Meta that Plaintiff was seeking to quash the March 2025 Subpoena and that Meta should not respond to that Subpoena until a further Order is issued by the Court. (ECF No. 49). The Court reiterated that instruction in another Order entered on April 3, 2025. (ECF No. 53). Thus, to date Meta has not produced any documents responsive to the Subpoena pending disposition of this Motion.

In the April 3, 2025 Order referenced above, the Court directed that: (a) the parties attempt to agree on a revised subpoena; (b) Plaintiff attempt to retrieve the Meta user content himself and, if successful, produce it to Defendants (thereby obviating the need for the Subpoena); (c) if Plaintiff could not retrieve the information himself and an agreement on the scope of a revised Subpoena was reached to by the parties, then Defendants could serve the revised Subpoena on Meta; and (d) if the parties could not reach an agreement, then Plaintiff was granted leave to file a motion to quash. (*Id.*). Plaintiff advised Defendants in communications dated April 9 and April 10, 2025 that he was unable to retrieve the requested information because his Instagram account had

---

[2] The March 2025 Subpoena is dated March 20, 2025. (ECF No. 62-1 at ECF-designated p. 59). Further, the intended recipient of the Subpoena — Meta — believes that the March 2025 Subpoena was issued on March 20, 2025. (ECF No. 65 at ECF-designated p. 12). However, the parties take the position in their papers that the Subpoena was served on March 21, 2025. (ECF No. 62-3 p. 7; ECF No. 65 p. 2). As the one-day difference is not relevant, the Court will refer to the Subpoena simply as the March 2025 Subpoena to avoid any confusion.

5

been "suspended." (ECF Nos. 62-1 at ECF-designated pp. 69-86; *see also id.* at ECF-designated p. 5).[3]

On May 9, 2025, the Springfield Defendants proposed revising the Subpoena as follows:

> 1. All Social Media and/or Documents that refer or relate to all Public posts, comments, replies to posts/comments, stories, reels, likes, and/or videos made or published by Plaintiff on Plaintiff's Instagram account, @rajehsaadeh, during the Relevant Time Period [*i.e.*, December 19, 2022, through November 22, 2024].
>
> 2. All Social Media and/or Documents that refer or relate to all Public likes by Plaintiff on Plaintiff's Instagram account, @rajehsaadeh, on the Public posts/comments, stories, reels, likes, and/or videos, made or published by any and all other users of Instagram during the Relevant Time Period.

(ECF No. 62-1 at ECF-designated pp. 88-98). In doing so, the Springfield Defendants agreed to narrow the time period for which records were sought and to make it clear that they were only seeking *public* posts, comments, stories, likes, or videos. (*Id.*). Despite significantly limiting the scope of the request, Plaintiff still objected to the Subpoena and therefore filed the instant Motion.

## II.   Motion To Quash

Plaintiff now moves to quash the March 2025 Subpoena as drafted and revise it to the production of:

> All publicly-viewable (non-private) Social Media and/or publicly-viewable (non-private) Documents publicly made or publicly published by Plaintiff on Plaintiff's Instagram account, @rajehsaadeh, from December 1, 2022, to the date of this Subpoena, including all
> - publicly-viewable (non-private) posts,
> - publicly-viewable (non-private) replies to publicly-viewable (nonprivate) posts,
> - publicly-viewable (non-private) comments,

---

[3] Instagram is owned by Meta Platforms, Inc.

6

- publicly-viewable (non-private) replies to publicly-viewable (nonprivate) comments,
- publicly-viewable (non-private) stories,
- publicly-viewable (non-private) reels,
- publicly-viewable (non-private) likes of publicly-viewable (non-private) posts, and
- publicly-viewable (non-private) videos.

(ECF No. 62 pp. 1-2).

Plaintiff further argues that a protective order should be issued "precluding dissemination, publication, or release of anything produced in response to said subpoena." (*Id.* p. 2). Plaintiff so moves in an effort to avoid the "disclos[ure] [of] irrelevant, private information and data from [Plaintiff's] social media accounts." (ECF No. 66 p. 5).

The Springfield Defendants oppose the Motion, arguing that Plaintiff has failed to show a basis to quash the Subpoena. (ECF No. 65 at ECF-designated pp. 6-9). The Springfield Defendants also erroneously argue that the Motion is moot because Meta already responded to the Subpoena indicating no documents would be produced. (*Id.* at ECF-designated p. 3).[4] Noticeably missing from the Springfield Defendants' opposition is any argument concerning Plaintiff's proposed revisions to the March 2025 Subpoena. (*See generally* ECF No. 65).

---

[4] Contrary to the Springfield Defendants' arguments (ECF No. 65 at ECF-designated pp. 2-3), the current dispute is not moot. In the April 3, 2025 Order, the Court required the Springfield Defendants to notify Meta that the Subpoena was being challenged and not to respond until the matter had been resolved (whether informally by agreement of the parties or following a decision on a formal motion). (ECF No. 53 ¶ 3). The Court did not issue any definitive decision on whether or not Meta would ultimately be required to respond to the Subpoena; it merely placed a temporary hold on the response pending the outcome of this Motion. (*Id.*). Further, Meta's response did not advise the Springfield Defendants that it was not responding to the Subpoena at all. (ECF No 65 at ECF-designated pp. 12-14). Rather, it set forth a number of boilerplate objections, explained that it would not accept subpoenas directed to Instagram and that such subpoenas must be directed specifically to Instagram, and provided instructions on necessary steps that must be followed. (*Id.*). Indeed, the communication from Meta indicates that if the requested information cannot be obtained directly from the user, then "Meta may produce reasonably available basic subscriber information.... after providing 21-days notice to the user of an affected account." (*Id.*). Thus, the Motion is far from moot.

**DISCUSSION**

**I.  Governing Law**

When a party serves a third-party subpoena, the information and documents sought in that subpoena must fall within the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1). *See In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Pursuant to Rule 26, parties:

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 45, which governs third-party subpoenas, provides in relevant part that a court may "quash or modify a subpoena that: ... (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "An undue burden exists when the subpoena is unreasonable or oppressive." *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (internal quotation marks and citation omitted). While there "is no strict definition of unreasonable or oppressive[,] …courts have used several factors in determining a subpoena's reasonableness: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) the relevance of the material; (4) the breadth of the request for production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed party." *Id.*; *see also* Fed. R. Civ. P. 26(c)(1) (concerning the issuance of

8

protective orders to protect a party from annoyance, embarrassment, oppression, or undue burden or expense).

When a party to an action seeks to quash a subpoena served on a third party, that party faces "a heavy burden" to demonstrate that "the requirements of Rule 45 are satisfied." *PNC Equip. Fin. LLC v. Mariani*, No. 19-cv-76, 2021 WL 4078864, at *1 (D.N.J. Sept. 8, 2021) (internal citation omitted). For instance, the objecting party must demonstrate that there is a privilege or privacy interest in the information being sought from the non-party. *See Schmulovich v. 1161 Rt. 9 LLC*, No. 07-cv-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007) (concerning a party's motion to quash a subpoena sent to a third-party bank with respect to the party's bank records); *Malibu Media, LLC v. Doe*, No. 15-cv-1742, 2015 WL 5996319, at *2 (D.N.J. Oct. 14, 2015) (concerning a party's motion to quash a subpoena sent to a third-party internet-service provider "seek[ing] to discover his … personal information").

## II.     The Motion To Quash Is Granted In Part

Here, Plaintiff advances three primary arguments in favor of his Motion to quash: (i) that the information sought is unreasonable and oppressive because it seeks irrelevant information that was not reviewed by the Springfield Defendants prior to making the decision not to renew Plaintiff's permit; (ii) that the Subpoena is unreasonable in temporal scope; and (iii) that it is overbroad, primarily because it is not clearly limited to public information.[5] The Court will address each in turn below.

---

[5] Plaintiff also vaguely asserted that the Subpoena would be unduly burdensome on Meta. (ECF No. 62-3 p. 13). However, Meta did not file a motion to quash and the Court has no reason to believe that the documents requested are of a breadth that is unmanageable to a company of Meta's size and capability.

9

With regard to Plaintiff's first argument, the Court has already found that the requested information is relevant and discoverable. (ECF No. 23 ¶ 1). The Springfield Defendants claim they denied Plaintiff's renewal application because they learned from a third party that Plaintiff made alarming posts on social media that suggested he might support terrorism. (ECF 43 pp. 9-10; *see also* ECF No. 35-2 at pp. 20-21). Whether or not the posts exist, and the contents of those posts if they do indeed exist, are certainly within the scope of discoverable information, even if — as Plaintiff argues — the Springfield Defendants never saw the actual posts before rendering its denial decision.[6] Whether Plaintiff's social media posts demonstrate that he is "lacking [in] the essential character of temperament necessary to be entrusted with a firearm" is relevant to his worthiness of being issued a carry permit, which is a central issue in this case. However, to balance the parties' interests and protect Plaintiff's privacy, the Court limited the information sought to only *public* posts, comments, stories, likes, or videos. (*See* ECF No. 27 ("Should any of the Defendants' counsel wish to subpoena Instagram (Meta), it shall first revise the authorization provided to Plaintiff so that it covers posts only, and *does not include any direct or private messages/emails*.") (emphasis added)). Thus, the Court disagrees with Plaintiff's contention that the Subpoena is unreasonable or oppressive and declines to quash the Subpoena on this basis.

Next, Plaintiff's argument based upon temporal scope is moot. Originally, the Springfield Defendants sought documents dating back to 2018. (ECF No. 62-1 at ECF-designated p. 65). Plaintiff objected and the Springfield Defendants narrowed the time period to December 19, 2022 through the present. (*Id.* at ECF-designated pp. 88-98). This narrower time frame appears to be not

---

[6] The Court makes no findings at this juncture as to whether the Springfield Defendants were permitted to rely upon hearsay statements from third parties, as opposed to independently verifying the social media posts themselves, before denying the renewal application. The Court focuses here only on whether or not such posts are properly within the scope of permissible discovery.

objectionable to Plaintiff because, in his proposed revisions, Plaintiff specified a similar time period of December 1, 2022 to the present. (ECF No. 62 pp. 1-2). Thus, the relevant time period of December 1, 2022 through the present would appear to be acceptable to the parties. This makes sense, since it covers the time period from when Plaintiff's initial gun permit was issued through the date of his renewal application. (ECF No. 43 at 4).

Finally, Plaintiff protests that the Subpoena as drafted is overly broad because it does not clearly specify that it is limited to only public content. The revised language proposed by the Springfield Defendants does, in fact, make it clear that it is limited to public posts, comments, stories, likes, or videos. (ECF No. 62-1 at ECF-designated pp. 88-98). Indeed, the word "public" is a modifier that appears at the beginning of each paragraph specifying the documents that are being requested. (*Id.* (requesting "All Social Media and/or Documents that refer or relate to all *Public* posts, comments, replies to posts/comments, stories, reels, likes, and/or videos….) (emphasis added)). While this seems clear to the Court, Plaintiff is apparently worried it might only be applied to "posts" and not to the latter categories of comments, replies to posts/comments, stories, reels, and/or videos. Thus, Plaintiff requests that Subpoena be revised to place the phrase "publicly-viewable" in front of each category of information requested and that the phrase "non-private" also be added. (ECF No. 62 pp. 1-2). Although this may go beyond what is necessary, if it will make Plaintiff more comfortable to repeatedly assert the phrases "publicly-viewable" and "non-private" for each category of information, then the Court has no problem approving that revision to the Subpoena. It does not impact the substance of what is being requested. Thus, Defendants shall revise the Subpoena to use the language proposed by Plaintiff.

The Court wishes to make clear that the phrase "publicly-viewable (non-private)" is meant to encapsulate both those posts, comments, replies to posts/comments, stories, reels, likes, and/or

11

videos that *are currently* publicly-viewable, and those that *were* publicly-viewable at any time before Plaintiff's social-media accounts were suspended. Thus, the Subpoena shall be crafted to make it clear that the phrase "publicly-viewable (non-private)" includes any posts that were made on or after December 1, 2022 that then became no longer publicly-viewable for any reason, such as: (a) the account being suspended or disabled by the controlling social-media platform; (b) Plaintiff deleting a post himself after he had initially posted it publicly; or (c) the social-media platform deleting a post after it had been initially posted publicly.

**III.    No Protective Order will be Issued**

Rule 26(c) authorizes a Court to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Here, Plaintiff additionally asks the Court to issue "a protective order precluding dissemination, publication, or release of anything produced in response to said subpoena." (ECF No. 62 p. 2). The request is without merit. The Court is only permitting the production of *public* posts, comments, replies to posts/comments, stories, reels, likes, and/or videos. Since they are or were already in the public domain, there is no need for a protective order. Plaintiff has no expectation of privacy in information that is or was publicly available.

**IV.    A Note on Meta's Response to the March 2025 Subpoena**

As noted above, Meta previously advised the Springfield Defendants that requests for information from Instagram must be directed to that entity. Therefore, the Subpoena, revised as set forth herein, may be served by the Springfield Defendants on Instagram, rather than Meta.

**CONCLUSION**

The Motion to Quash will be granted in part. The Subpoena is quashed. The Springfield Defendants shall serve a revised subpoena upon Instagram that: (a) tracks the revisions put forth

12

by Plaintiff in its Notice of Motion, paragraph 2(a) (ECF No. 62); and (b) specifies that information must be produced that *is currently* publicly-viewable or *was* publicly-viewable at any time. Accordingly, for the reasons set forth above,

**IT IS** on this **23rd** day of **December**, **2025**:

**ORDERED** that Plaintiff's Motion to Quash (**ECF No. 62**) is **GRANTED IN PART**; and it is further

**ORDERED** that the Clerk of the Court is directed to terminate the Motion at ECF No. 62 and it is further

**ORDERED** that, by **January 7, 2026,** Defendants may serve a subpoena upon Instagram that is drafted in accordance with the reasoning set forth above; and it is further

**ORDERED** that there shall be a status conference before Magistrate Judge Stacey D. Adams on **February 27, 2026 at 3:00 p.m.** via video conference. Microsoft Teams credentials will be provided. At least five (5) business days before the conference, the parties shall file a joint status letter, no more than three (3) pages in length.

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge

Dated: December 23, 2025